**AVNET, INC., Plaintiff,**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY and Kemper Corporation, Defendants.**

**No. 87 Civ. 0758 (EW).**

United States District Court, S.D. New York.

May 12, 1987.

Cadwalader, Wickersham & Taft, New York City, for Avnet, Inc.; Howard R. Hawkins, Jr., James B. Milliken, of counsel.

Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., Sidley & Austin, New York City, for American Motorists Ins. Co. and Kemper Corp.; Lawrence Zelle, Kathleen A. Marron, Minneapolis, Minn., Maura Fecher, New York City, of counsel.

EDWARD WEINFELD, District Judge.

Defendants American Motorists Insurance Company ("AMICO") and Kemper Corporation ("Kemper") move: 1) to dismiss Counts One through Five of the complaint of plaintiff Avnet, Inc. ("Avnet"), alleging civil RICO violations, and Counts Eight through Ten, alleging common law fraud, fraud on the public, and criminal indifference to civil liability, for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b), or for a more definite statement as to those counts under Fed.R. Civ.P. 12(e); and 2) to strike from the complaint Counts Nine and Ten on the ground that they are redundant and do not state independent claims for relief. Plaintiff cross-moves for a default judgment on Count Six, alleging breach of the liability policy, and Count Seven, alleging bad faith breach of the liability policy, on the ground that defendants have not moved or answered with respect to those counts within the time allowed. Defendants also move pursuant to Fed.R.Civ.P. 26(c) for a protective order staying what it contends are burdensome, overbroad and oppressive discovery requests.

Plaintiff is the assured under various policies of insurance issued by defendant AMICO, a wholly-owned subsidiary of defendant Kemper. Plaintiff filed claims with defendants for coverage on three separate occasions. In the first instance, Avnet was sued by a third party, Scope Industries and some of its officers ("Scope"), who charged that Avnet had maliciously instituted a prior action against Scope. The Scope plaintiffs sought compensatory and punitive damages against Avnet. Avnet requested that AMICO both indemnify and defend against the Scope action, asserting that such was required under the Comprehensive Liability policy issued to it by AMICO. AMICO questioned that the policy covered compensatory damages and denied it covered punitive damages. Avnet defended the Scope action, which eventually was settled. Avnet then sought legal fees of $538,380.63 incurred by it in defend-

ing the action, calculated at the hourly rate of $225.00 for the highest billing partner. AMICO disputes the reasonableness of these rates and has paid Avnet $72,938.63, calculated at the maximum hourly rate of $95.00, which is what it pays its own attorneys. Avnet now seeks the difference.

The second and third disputed claims center about fidelity bonds that plaintiff was issued by AMICO. In one instance, Avnet suffered a loss of almost one million dollars because of a kickback scheme engaged in by two officers of Carol Cable Company, a division of Avnet. Although AMICO eventually paid this claim, Avnet alleges that AMICO acted in bad faith by delaying payment for two years. Avnet has also submitted another claim under the fidelity bonds wherein it asserts that it suffered losses at the hands of another of its employees involved in a kickback scheme. AMICO has not paid out this claim, which is the subject of a separate lawsuit brought by plaintiff against AMICO in California Superior Court.

Based on the foregoing, plaintiff has asserted five separate causes of action for violations of the civil provisions of the Racketeer Influenced Corrupt Organizations Act ("RICO"),[1] two breach of contract claims, one claim for common law fraud, one claim styled "fraud on the public", and one claim referred to as "civil indifference to criminal liability." The theory of the claims (save the claims for breach of contract) is that defendants have deceived both plaintiff and the public at large by representing that it will pay just claims promptly thereby inducing plaintiff and the public to purchase insurance policies, all the while intending never to live up to their representations. In an attempt to satisfy the pleading requirements of RICO, plaintiff has alleged that defendants committed mail and wire fraud in connection with its refusal to pay, or delay in paying, plaintiff's insurance claims.

## A. *Fed.R.Civ.P. 9(b)*

■ The purposes of Fed.R.Civ.P. 9(b) are to assure that a defendant accused of

---

**1.** 18 U.S.C. § 1964.

fraudulent conduct is given particularized information to facilitate an adequate defense to the charges, to prevent damage to defendant's reputation resulting from an unjustified claim of fraud, and to avoid the *in terrorem* force of claims brought for the sole purpose of increasing the settlement value of a lawsuit.[2] To satisfy Rule 9(b), a complaint must allege "(1) specific facts; (2) sources that support the alleged facts; and (3) a basis from which an inference of fraud may fairly be drawn."[3] While the rule allows the defendant's state of mind to be averred generally, the plaintiff is not relieved from the burden of detailing the particulars as to what statements were made, who made them, the time and place of the statements, and how they were fraudulent.[4]

■ The complaint, instead of succinctly outlining the alleged fraud, gives a rambling account of defendants' refusal on three occasions to promptly compensate plaintiff for losses it asserts were covered by the insurance policies. Plaintiff does not provide the text of the insurance policies, nor quote from any document or writing alleged to have been sent in furtherance of their fraudulent scheme. More revealing of the insufficiency of the complaint is the failure of plaintiff, who alleges that defendants intentionally filed false documents with public agencies, to specify what those documents are or how they are false. The failure to comply with Rule 9(b) is even more egregious in the case of defendant Kemper Corporation, which did not issue the policies but is named as a defendant upon allegations that it is the parent corporation of defendant AMICO.

In sum, it cannot be gleaned from the complaint the nature of the representations alleged to be fraudulent, let alone any inference of fraud fairly attributable to those statements. Rather, the pleading upon its face with its charges of racketeering violations based on the three asserted claims of coverage under the policies, which AMICO disputed, appears designed to force insurance companies who dispute coverage to forthwith pay such disputed claims. Without particularity as to the alleged fraudulent representations made, these allegations cannot stand. The motion to dismiss the RICO and fraud claims for failure to comply with Fed.R.Civ.P. 9(b) is granted, with leave to serve an amended complaint.

**B.   *Counts Nine and Ten***

Defendants also move to dismiss or strike Count Nine, which seeks punitive damages based on defendants' alleged fraud on the public, and Count Ten, which seeks both punitive and compensatory damages and alleges criminal indifference to civil liability, on the grounds that: 1) New York does not recognize a separate cause of action for punitive damages; and 2) the claims are almost identical to those raised in Count Eight, alleging common law fraud.

At oral argument, attorneys for plaintiff conceded that Count Nine, alleging fraud on the public, was redundant given Count Eight. Count Nine is therefore stricken. However, plaintiff contends that Count Ten should be allowed as a separate cause of action because that count requests both compensatory and punitive damages.

■ Under New York law, a plaintiff may be awarded punitive damages if it proves that: 1) defendant's actions are directed at the public generally, or 2) the availability of such an award is essential to induce a potential plaintiff to go to court to right a wrong that otherwise would go

**2.**   *See Crystal v. Foy,* 562 F.Supp. 422, 424 (S.D.N.Y.1983); *see also Decker v. Massey-Furgeson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982); *Denny v. Barber,* 576 F.2d 465, 468–69 (2d Cir.1978); *Segal v. Gordon,* 467 F.2d 602, 606–07 (2d Cir.1972).

**3.**   *Crystal v. Foy,* 562 F.Supp. at 425.

**4.**   *Devaney v. Chester,* 813 F.2d 566, 568 (2d Cir.1987); *Connecticut National Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987); *Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985); *Nevitsky v. Manufacturers Hanover Brokerage Services,* 654 F.Supp. 116, 120 (S.D.N.Y.1987).

unremedied.[5] These requirements are not causes of action in themselves, but merely theories under which a plaintiff may prove it is entitled to punitive damages. The nature of federal pleading is by statement of claim, not by legal theories.[6] Indeed, under Fed.R.Civ.P. 8(a), a plaintiff is not required to assert a particular theory of relief, but only facts which would entitle it to relief.[7]

■■■ However, if a plaintiff chooses to include legal theories in its complaint, those theories should, for the sake of clarity, be included in a single claim for relief.[8] Fed.R.Civ.P. 8(e)(1) requires that the averments of a pleading be simple and concise. The three "causes of action" for common law fraud, fraud on the public, and civil indifference to criminal liability state a single tort claim against defendants. Because plaintiff has splintered its claims, this complaint is cumbersome and unwieldy. Defendants' motion to strike Counts Nine and Ten as redundant is granted. Plaintiff may set forth all theories under which it claims entitlement to punitive damages in a single count in an amended complaint.

### C. Cross-Motion for Default Judgment

■■■ Defendants have moved to dismiss eight of the ten counts in the complaint, but have neither moved nor answered with respect to Count Six, which alleges breach of the liability policy, and Count Seven, which alleges bad faith breach of the liability policy. Plaintiff therefore moves that a default judgment should be entered on those counts.

It is evident that defendants' failure to plead as to Counts Six and Seven was inadvertent. Granting a default judgment is a drastic sanction within the discretion of the court.[9] This is not a case which has been avoided or neglected; to the contrary, defense counsel have interposed a vigorous and able defense to the charges. The motion for a default judgment is denied, provided defendants serve and file a response to Counts Six and Seven no later than May 22, 1987.

### D. Protective Order

Defendants move to stay discovery pending the filing of satisfactory allegations of fraud so that plaintiff will not be able to undertake a "fishing expedition" in an effort to state its claims properly.[10] Defendants argue that it is impermissible for a party to first file a complaint and later conduct discovery to determine whether a cause of action exists.[11]

■■■ The discovery rules are not a hunting license to conjure up a claim that does not exist.[12] These discovery requests, designed to uncover fraud plaintiff has yet to allege properly, are impermissible at this stage in the litigation. Defendants have shown good cause [13] for the imposition of a stay of discovery until an amended complaint is filed.

In conclusion, Counts One, Two, Three, Four, Five, Eight, Nine and Ten of the

---

**5.** *Pepsico, Inc. v. Continental Casualty Co.,* 640 F.Supp. 656, 665 (S.D.N.Y.1986); *Walker v. Sheldon,* 10 N.Y.2d 401, 405, 179 N.E.2d 497, 223 N.Y.S.2d 488 (1961).

**6.** Fed.R.Civ.P. 8(a); *Newman v. Silver,* 713 F.2d 14, 15 n. 1 (2d Cir.1983).

**7.** *Gins v. Mauser Plumbing Supply Co.,* 148 F.2d 974, 976 (2d Cir.1945).

**8.** *See Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 743 n. 4, 96 S.Ct. 1202, 1206 n. 4, 47 L.Ed.2d 435 (1976) ("a complaint asserting only one legal right, even if it seeking multiple remedies for violation of that right, states a single claim for relief.")

**9.** *Luis C. Forteza & Hijos, Inc. v. Mills,* 534 F.2d 415, 419 (1st Cir.1976).

**10.** *See Decker v. Massey-Furgeson, Ltd.,* 681 F.2d 111, 116 (2d Cir.1982).

**11.** *See Rich v. Touche, Ross & Co.,* 68 F.R.D. 243, 247 (S.D.N.Y.1975).

**12.** *Samuels v. Eleonara Beheer, B.V.,* 500 F.Supp. 1357, 1362 (S.D.N.Y.1980), *aff'd without opinion,* 661 F.2d 907, 910 (2d Cir.1981); *accord Singer v. Bell,* 613 F.Supp. 198, 205 (S.D.N.Y. 1985).

**13.** *Howard v. Galesi,* 107 F.R.D. 348, 350 (S.D.N. Y.1985).

complaint are dismissed, and leave granted to plaintiff to serve and file an amended complaint by June 1, 1987. Plaintiff's cross-motion for a default judgment as to Counts Six and Seven is denied, provided defendants serve and file a response to the allegations contained therein by May 22, 1987. All discovery is to be stayed pending the filing of an amended complaint.

So ordered.